# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SALVATORE PELULLO,

    Petitioner,

v.                                                      Case No. 5:23-cv-189-WFJ-PRL

WARDEN, FCC COLEMAN — LOW,

    Respondent.
_____/

## **ORDER**

Before the Court is Salvatore Pelullo's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 6). The Warden of FCC Coleman Low ("Respondent") has responded in opposition (Dkt. 9), and Petitioner has replied (Dkt. 10). Petitioner and Respondent have also filed supplemental briefing (Dkt. 11; Dkt. 13; Dkt. 16; Dkt. 18; Dkt. 21). Upon careful consideration, the Court grants-in-part and denies-in-part the Petition.

## **BACKGROUND**

This petition is about whether Petitioner may earn time credits under the First Step Act ("FSA"), 18 U.S.C. § 3632(d)(4), for completing Bureau of Prisons ("BOP") programming while housed in BOP facilities on writ with the United States Marshal Service ("USMS"). The Court finds, in this "as applied" ruling, that Petitioner may so qualify. In Petitioner's case BOP cannot, through administrative

rule, categorically deny "successful participation" status to him for completing qualifying BOP programming in BOP institutions just because he was on a USMS writ. This conflicts with the FSA's eligibility provisions. Respondent is directed to recalculate Petitioner's time credits in accordance with this Order.

I.  **Legal Background**

On December 21, 2018, Congress enacted the FSA, Pub. L. No. 115-391, 132 Stat. 5194, which itself created parameters for a "risk and needs assessment system" concerning recidivism and recidivism reduction, 18 U.S.C. § 3632(a). Among other things, the FSA mandates that the "System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism programs[.]" *Id.* § 3632(d). One of these incentives is time credits:

> (A) In general. -- A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming [("EBRRs")] or productive activities [("PAs")], shall earn time credits as follows:
>
> (i)   A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii)  A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

*Id.* § 3632(d)(4)(A).

As noted above, the FSA provides that prisoners "shall earn time credits" for successfully completing programing unless they are ineligible under section 3632(d)(4)(D). *Id.* But time credits are not "available" for programing successfully completed "prior to the date of enactment of this subchapter; or . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." *Id.* § 3632(d)(4)(B). And "[d]eportable prisoners" are ineligible to apply any time credits they may have earned. *Id.* § 3632(d)(4)(E).

On January 19, 2022, BOP promulgated a final rule concerning FSA time credits, *see* 87 Fed. Reg. 2705-01, which was later codified at 28 C.F.R. § 523.41 (the "Rule"). The Rule provides the following with respect to "successful participation":

>    (1) An eligible inmate must be "successfully participating" in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs.
>
>    (2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.
>
>    (3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.

> (4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:
>
>   (i)   Placement in a Special Housing Unit;
>
>   (ii)  Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
>
>   (iii) Temporary transfer to the custody of another Federal or non–Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);
>
>   (iv)  Placement in mental health/psychiatric holds; or
>
>   (v)   "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

28 C.F.R. § 523.41(c)(1)–(4). The FSA does not itself define "successful participation" in, or "successful completion" of, EBRRs or PAs (collectively, "programing").

## II. Factual Background

On July 29, 2015, the United States District Court for the District of New Jersey sentenced Petitioner to 360 months' imprisonment for his participation in organized crime. Judgment, *United States v. Scarfo, et al.*, No. 1:11-cr-740-RBK-2 (D. N.J. July 30, 2015) (ECF No. 1289). Petitioner was remanded into custody the same day, *id.* at ECF No. 1287, thus commencing his sentence.

Sometime later, Petitioner began participating in programming. According to BOP's records, Petitioner's programming was tracked in the following blocks: (1) 62 program days between December 21, 2018, and February 21, 2019 ("Block One"); (2) 99 program days between February 21, 2019, and May 31, 2019 ("Block Two"); (3) 46 program days between May 31, 2019, and July 16, 2019 ("Block Three"); (4) 1 program day between July 16, 2019, and July 17, 2019 ("Block Four"); (5) 14 program days between July 17, 2019, and July 31, 2019 ("Block Five"); (6) 701 program days between July 31, 2019, and July 1, 2021 ("Block Six"); (7) 41 program days between July 1, 2021, and August 11, 2021 ("Block Seven"); (8) 9 program days between August 11, 2021, and August 20, 2021 ("Block Eight"); and (9) 710 program days between August 20, 2021, and July 31, 2023 ("Block Nine"). Dkt. 9-1 at 38–40.

Around 2023, Petitioner found out that BOP only credited him with 865 days of successful programing. It has since become clear that BOP fully discredited Blocks One, Three, Six, and Eight. *Id.* BOP maintains that Petitioner was largely on a federal writ with the USMS during these time periods. Dkt. 9 at 3; Dkt. 9-1 at 38–40. According to BOP, this means that Petitioner was technically outside of BOP custody during Blocks One, Three, Six, and Eight, and was therefore ineligible for "successful programing" days under 28 C.F.R. § 523.41(c)(4)(iii). Dkt. 9 at 3–4.

5

On June 22, 2023, after multiple administrative appeals, Petitioner filed the instant Petition. *See generally* Dkt. 6. Petitioner asserts one claim: BOP "has improperly and illegally withheld earned time credits earned under the First Step Act of 2018 and, thus, is improperly executing my sentence." *Id.* at 6. Petitioner requests an additional 802 days of successful participation credit. *Id.* at 12.

## LEGAL STANDARD

A section 2241 petition provides grounds for attacking "the execution of a sentence, rather than the validity of the sentence itself." *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 134, 1352 (11th Cir. 2008). Because "the administration of [time credits] is done by the BOP under [18 U.S.C. § 3632], this process [also] involves the execution rather than the imposition of sentence[.]" *Bishop v. Reno*, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000). It is therefore "a matter for habeas corpus review in district court." *Id.*[1]

## DISCUSSION

Prior to *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the instant case would have been resolved by reviewing Petitioner's claim under the *Chevron* framework. *See generally Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,*

---

[1] A petitioner must exhaust available administrative remedies before he may file a section 2241 petition. *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). Respondent concedes that Petitioner "has exhausted his administrative remedies within the Bureau of Prisons[.]" Dkt. 13 at 1.

*Inc.*, 467 U.S. 837 (1984), *overruled by Loper*, 144 S. Ct. 2244. Multiple district courts have applied the *Chevron* framework to 28 C.F.R. § 523.42(a), which addresses "when an eligible inmate begins earning FSA Time Credits[,]" and found that the FSA unambiguously addresses eligibility. *See Patel v. Barron*, No. C23-937-KKE, 2023 WL 6311281, at *5 (W.D. Wash. Sept. 28, 2023) (finding that "the FSA is unambiguous as to when a prisoner can and cannot earn time credits"); *Huihui v. Derr*, No. CV 22-00541 JAO-RT, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023) (finding that "Congress has directly spoken to the precise question of *when* a prisoner is ineligible for FSA ETCs"); *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023) (same). These same courts went on to find that section § 523.42(a) ("Earning First Step Act Time Credits") was improperly applied where it operated to "add[] an additional exclusion" to eligibility not found in the FSA itself. *Patel*, 2023 WL 6311281, at *5 (relying on *HuiHui* and *Yufenyuy*).

Contrary to Petitioner's averments, this case is somewhat different, and not merely because of *Loper*. Here, BOP recognizes that Petitioner was generally eligible to earn time credits but argues that he was ineligible to "successfully complete" programming during Blocks One, Three, Six, and Eight under 28 C.F.R. § 523.41(c)(4)(iii). Unlike general eligibility, moreover, eligibility to "successfully complete" programming is not defined by the FSA. *See generally* 18 U.S.C. § 3632. It is also open to multiple reasonable interpretations, rendering it an ambiguous

7

statutory term. *Peoples Gas Sys., a division of Tampa Elec. Co. v. Posen Constr., Inc.*, 323 F. Supp. 3d 1362, 1366 (M.D. Fla. 2018) (explaining that statutory language is "ambiguous if reasonable persons can find different meanings in the same language") (internal quotations omitted); *BBX Cap. v. Fed. Deposit Ins. Corp*, 956 F.3d 1304, 1316 (11th Cir. 2020) (same).

This being the case, it is the "responsibility of the [C]ourt to decide whether ["successfully completes" in 18 U.S.C. § 3632(d)(4)(A)] means what [BOP] says [in 28 C.F.R. § 523.41(c)(1)–(4)]." *Loper*, 144 S. Ct. at 2261 (internal quotations and citation omitted). In so doing, the Court notes that Congress made "Bureau of Prisons officers and employees responsible for administering the System[,]" 18 U.S.C. § 3632(f), and that, "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court" is "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits[,]" *Loper*, 144 S. Ct. at 2263.

With these principles in mind, the Court finds 28 C.F.R. § 523.41(c) to be facially valid. Congress enacted the FSA "with the purpose of modifying sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism." *United States v. Venable*, 943 F.3d 187, 188 (4th Cir. 2019). Section 3632(d) furthers this goal by incentivizing participation in programming. And section 3632(d)(4)(A) goes one step further by incentivizing

8

"successful participation" in programming. 28 C.F.R. § 523.41(c)(1) merely recognizes as much by providing that "an eligible inmate must be 'successfully participating' in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs." And Section 523.41(c)(2) recognizes BOP's role in administering the system as a whole.

The specific provisions found in section 523.41(c)(4)(i)–(v) are equally valid. It is important to recognize from the outset that section 532.41(c)(4) provides that "[a]n eligible inmate . . . will *generally* not be considered to be 'successfully participating'" in programming under the circumstances stated at sections 523.41(c)(4)(i)–(v). 28 C.F.R. § 532.41(c)(4) (emphasis added). Said circumstances are therefore not absolute bars on earning time credits under the Rule—they are presumptive bars. And these presumptive bars make sense. Consider section 523.41(c)(4)(i). While there could be multiple reasons for being placed in a special housing unit ("SHU"), the impact of such a placement generally precludes one from meaningfully participating, or participating at all, in programing. Petitioner himself recognizes as much by conceding that BOP "properly disallowed" 173 days of participation for time he spent in the SHU. *See* Dkt. 6 at 26. Similarly, there can be little doubt that "opting out," as qualified under section 523.41(c)(4)(v), generally results in a lack of successful participation.

9

The same is true in relation to section 523.41(c)(4)(iii), the provision truly at issue here. As BOP explains in their Response, temporary transfer through writ often results in "days in transit" and time spent at "USMS contract facilit[ies]" which are outside of BOP's purview. Dkt. 9 at 4. It is unclear how a prisoner could successfully participate in BOP programming under these circumstances. In fact, it appears that a prisoner "generally" will not be able to do so, as BOP suggests. The Court consequently finds BOP's "interpretation of [the FSA]" especially persuasive in this matter, at least "to the extent it rests on factual premises within [BOP's] expertise." *Loper*, 144 S. Ct. at 2267 (internal quotations and citation omitted). Section 523.41(c) is facially valid and a proper exercise of BOP's discretion in interpreting and administering the FSA.

All the same, the Court finds that section § 523.41(c) was improperly applied in this case. As previously mentioned, the problem in *Patel*, *HuiHui*, and *Yufenyuy* was the way in which BOP used section 523.42(a) to add an additional exclusion to general eligibility not found in the FSA's unambiguous eligibility provisions. *See Patel*, 2023 WL 6311281, at *5 (finding that section 523.42(a) "adds an additional exclusion" to eligibility under the FSA); *Huihui*, 2023 WL 4086073, at *5 (same); *Yufenyuy*, 659 F. Supp. 3d at 218 (same). This is exactly what BOP has done here, albeit indirectly, by treating 523.41(c)(4)(iii) as a blanket exclusion to successful

10

programing even where BOP concedes that Petitioner was completing BOP programming in BOP facilities.

The record exposes this functional eligibility exclusion for what it is. Take, for instance, BOP's records pertaining to Block Six. BOP's "FSA Time Credit Assessment" for Block Six disallows 701 days of programing between July 31, 2019, and July 1, 2021, stating "[n]ot in qualifying admit status." Dkt. 9-1 at 40. BOP's "Inmate Education Data Transcript[,]" on the other hand, demonstrates that Petitioner completed numerous hours of BOP EBRRs at a BOP facility (FDC Philadelphia) during this time. Dkt. 6 at 31. Consider also BOP's Declaration and Certification of Records. Therein, BOP explicitly states that "[a]n inmate is *eligible* to earn" time credits "when they are involved in 'program reviews' or 'teaming' [at his or her designated facility] and adheres to their program review requirements by participating in [programming.]" Dkt. 9-1 at 3 (emphasis added).

The FSA itself does not tie a prisoner's eligibility to any specific BOP facility. Thereunder, time credits are available for successfully completed programing unless that programming is completed: (1) "prior to the date of enactment of this subchapter; or . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)"; or (2) the prisoner is otherwise ineligible under section 3632(d)(4)(D). 18 U.S.C. §3632(d)(4)(B). None of these disqualifications apply to Petitioner.

BOP attempts to alleviate this tension by qualifying ineligibility under section 523.41(c)(4)(iii) as an ineligibility to "successfully participate" rather than an ineligibility to earn time credits generally, but such a blanket, automatic prohibition in Petitioner's case appears contrary to the FSA. BOP itself makes clear that "[t]he calculation of FTCs is fully automated and based on the number of 30-day periods in earning status." Dkt. 9-1 at 5. An ineligibility to "successfully participate" under a section 523.41(c)(4)(iii) designation status caused an automatic ineligibility for Petitioner to earn time credits when he was in BOP facilities taking BOP programs, albeit on a USMS writ. In this case, it resulted in the automatic denial of time credits that Petitioner was eligible to earn under the FSA.

As a final matter, the Court is not persuaded that Petitioner could not successfully participate in programing merely because he was outside of his designated facility, and therefore outside of that facility's purview. The FSA does not lay this limit on a prisoner's eligibility to earn time credits or constrain BOP's ability to review a prisoner's programing across separate BOP facilities. Furthermore, section 523.41(c)(2) merely states that "'[s]uccessful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." Nowhere has BOP claimed that all of

Petitioner's disallowed programming was non-recommended or non-compliant. Nor has BOP adequately explained why BOP staff at Petitioner's non-designated facilities were unable to make a determination about the nature of his participation in EBRRs. If anything, it appears that BOP's application of section 523.41(c)(4)(iii) in this case was purposed to dissuade Petitioner from participating in programing. Or this application as to Petitioner is to create a system where BOP is not responsible for administering the FSA with respect to a sizeable class of federal inmates who are in federal prisons. This is contrary to the FSA.

## CONCLUSION

BOP must make an individualized determination concerning whether Petitioner participated in BOP programing based on his individualized risk and needs assessment, and whether he complied with the requirements of each particular EBRR Program or PA, during Blocks One, Three, Six, and Eight. BOP must then recalculate Petitioner's time credits accordingly, if appropriate.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

(1) The Petition (Dkt. 6) is **GRANTED-IN-PART and DENIED-IN-PART**.

(2) The Clerk is directed to close this case.

(3) Petitioner is denied a Certificate of Appealability, as he has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner therefore may not proceed on appeal *in forma*

*pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on August 13, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record